1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7              FOR THE NORTHERN DISTRICT OF CALIFORNIA

8   GEORGE PUTNAM,                        No. 09-02230 CW

9          Plaintiff,                     ORDER GRANTING
                                          DEFENDANT'S
10     v.                                 MOTION TO COMPEL
                                          ARBITRATION
11  CITIGROUP GLOBAL MARKETS, INC.,

12         Defendant.

13  _____/

14

15     Defendant Citigroup Global Markets, Inc. (CGMI) moves to

16  compel Plaintiff George Putnam to submit his claims against it to

17  binding arbitration before the Financial Industry Regulatory

18  Authority (FINRA). Putnam opposes the motion. Having considered

19  all of the papers filed by the parties, the Court grants CGMI's

20  motion.

21                            BACKGROUND

22     Before retiring, Putnam worked as the Chief Financial Officer

23  of a small Canadian mining company, QGX. In September, 2008, QGX

24  was bought by a larger corporation and, as part of the transaction,

25  Putnam exercised $1,376,800 (Canadian) in stock options. Putnam

26  maintained brokerage accounts with the entity currently known as

27  Morgan Stanley Smith Barney and he sought to deposit this check

28  into one of those accounts. On September 18, 2009, Putnam met with

United States District Court
For the Northern District of California

Norm Bahramipour, a Vice President of the Wealth Management division of Morgan Stanley Smith Barney in Walnut Creek to discuss the best way to cash the options check as soon as possible. At the end of the meeting, "Mr. Bahramipour confirmed that Smith Barney would use its affiliated bank, Citibank, to process the check." Comp. ¶ 14. When Putnam left Bahramipour's office, Putnam "had made abundantly clear his instructions to have the check converted to U.S. dollars at the earliest possible moment." Id. at ¶ 16. The funds were not converted until November 4, 2008, and on that date, the conversation rate from Canadian to United States dollars had changed enough to devalue Putnam's options by over $300,000 (United States).

Putnam brings this action seeking damages for: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) professional negligence, (4) fraud, (5) negligent misrepresentation and (6) "common count -- money had and received." CGMI claims that Putnam must submit these claims to arbitration. Putnam asserts that (1) CGMI waived its right to arbitration and (2) his claims do not fall within the scope of the arbitration agreements.

DISCUSSION

I. Waiver

The right to arbitration, like any other contractual right, may be waived. United States v. Park Place Associates, Ltd., 563 F.3d 907, 921 (9th Cir. 2009). However, the Ninth Circuit emphasizes that finding a "waiver of the right to arbitration is disfavored because it is a contractual right, and thus 'any party

2

United States District Court
For the Northern District of California

arguing waiver of arbitration bears a heavy burden of proof.'" <u>Van Ness Townhouses v. Mar Indus. Corp.</u>, 862 F.2d 754, 758 (9th Cir.1988) (quoting <u>Belke v. Merrill Lynch, Pierce, Fenner & Smith</u>, 693 F.2d 1023, 1025 (11th Cir. 1982)).  "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement." <u>Fisher v. A.G. Becker Paribas Inc.</u>, 791 F.3d 691, 694 (9th Cir. 1986).  The party seeking to prove waiver of the right to compel arbitration must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." <u>Id.</u>  Putnam has failed to carry his burden.

Putnam claims that, in February, 2009,[1] Jan Russo, Vice President and Operations Manager of the Morgan Stanley Smith Barney office in Walnut Creek, told him that he did not need to arbitrate his claims.  Russo allegedly made this statement after she provided Putnam with a one-page client agreement from 1996.  Russo allegedly noted that "the agreement was very old, and stated that it did not appear to include an arbitration agreement."  Putnam Decl. ¶ 6.  Russo admits that she provided Putnam with a "copy of a portion of one signed agreement" but denies telling him that the agreement did not contain an arbitration clause.  Russo Supp. Decl. ¶ 8.  The

---

[1] Putnam notes that, in his moving papers and declaration, he incorrectly pre-dated the year of the events in question by one year.  Thus, Putnam's motion and declaration state that Ms. Russo made these comments to him in February, 2008, but he later acknowledged that this occurred in February, 2009.

Court finds it unlikely that Ms. Russo, an employee of CGMI for over twenty years, would tell a client that he did not have to arbitrate claims against her company. ("In my over-20-years of working with CGMI and its predecessors, new clients have always needed to sign a Client Agreement containing a pre-dispute arbitration clause. I have never told any client that he or she did not need to arbitrate claims against CGMI."). <u>Id.</u> at ¶ 9.

However, even if Russo told Putnam he didn't need to arbitrate his claims, he has not shown that he has suffered prejudice. Putnam filed the lawsuit three months after his discussion with Russo. Less than a month after Putnam filed the lawsuit, and before he served the complaint on CGMI, CGMI demanded that he submit his claims to FINRA arbitration. Stecher Decl. ¶¶ 3-6, Exhs. B, D. Putnam refused these demands. <u>Id.</u>, Exh. C. However, in his opposition to this motion, Putnam states, "[H]ad I known of the option to send this case immediately to a FINRA arbitration, I would have taken that option." Putnam Decl. ¶ 8. Putnam has presented no evidence that CGMI obstructed his effort to arbitrate this matter.

Putnam claims prejudice because he has incurred "hundreds of dollars in costs" while pursuing this litigation. However, Putnam does not state what these costs are or whether he would have incurred these costs if this claim were arbitrated. Moreover, these costs were incurred after Putnam refused CGMI's demand to submit to arbitration. Thus, even if these costs constitute prejudice, they are the result of Putnam's choice to continue this litigation in the face of arbitration agreements and CGMI's demands

4

United States District Court
For the Northern District of California

that he abide by the terms stated therein.  The self-imposed burden of participating in pre-trial civil litigation is not, in and of itself, sufficient evidence of prejudice.  <u>See</u> <u>Fisher</u>, 791 F.2d at 698 (rejecting plaintiffs' "surprising contention" that they were prejudiced because they "willingly incurred the substantial expense involved in their litigation in order to benefit from a full jury trial" because that "wound was self-inflicted"); <u>Lake Comm., Inc. v. ICC Corp.</u>, 738 F.2d 1473, 1477 (9th Cir. 1984) (holding that plaintiff suffered no prejudice from being required to respond to defendant's motion to dismiss and limited discovery).  In sum, Putnam has not carried his burden to establish waiver of CGMI's right to arbitrate his claims.

II.  Scope of Arbitration Agreement

Over the years, Putnam opened or upgraded many security brokerage accounts with CGMI.  Each time he opened or upgraded an account, he signed a Client Agreement.  The first page of the agreements bears the heading, "Salomon Smith Barney: A Member of Citigroup."  These agreements contain a pre-dispute arbitration clause, set forth in bold type, which provides, in relevant part:

Arbitration is final and binding on the parties.

The parties are waiving their right to seek remedies in court, including the right to jury trial.

I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof between me and SSB[2] and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SSB

---

[2]SSB is defined in the introductory paragraph of the client agreement as "Salomon Smith Barney Inc., its subsidiaries, divisions, or other entities."

United States District Court
For the Northern District of California

individually or jointly with others in any capacity;
(ii) any transaction involving SSB or any predecessor firms
by merger, acquisition or other business combination and me,
whether or not such transaction occurred in such account or
accounts; or (iii) the construction, performance or breach
of this or any other agreement between us, any duty arising
from the business of SSB or otherwise, shall be determined
by arbitration before, and only before, any self-regulatory
organization or exchange of which SSB is a member.

Russo Decl., Exhs. B and D.

Putnam argues that his claims lie outside the scope of the arbitration agreements he signed because those agreements were made with Salomon Smith Barney and, in the present lawsuit, he is suing CGMI for the acts committed by Citibank. Putnam argues that his complaint states that Citibank, a separate division of CGMI, was primarily responsible for his losses. He claims that his agreements with Salomon Smith Barney do not compel arbitration with CGMI in this case.

The Supreme Court has held that "any doubts concerning the scope of arbitration should be resolved in favor of arbitration . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Gulf Navigation Co., 363 U.S. 574, 582 (1960). With this guidance in mind, the arbitration agreements that Putnam signed can be broadly read to include Putnam's lawsuit against CGMI.

The arbitration agreements contain broad language that they apply to "all claims and controversies" between Putnam and SSB, and

SSB is defined as "Salomon Smith Barney Inc., its subsidiaries, divisions, or other entities." CGMI has presented evidence that "Salomon Smith Barney and CGMI are one and the same." Russo Suppl. Decl., ¶ 4. Specifically, Salomon Smith Barney is a division and service mark of CGMI. Further, CGMI and Citibank are affiliate entities, both of which are indirect wholly-owned subsidiaries of Citigroup, Inc. Id. at ¶ 3. Moreover, the headings on all client agreements bear both names Salomon Smith Barney and Citigroup.

The Court also notes that, although Putnam mentions Citibank in the complaint, his causes of action are specifically alleged against CGMI. See Comp. ¶¶ 23-27 (alleging CGMI breached contract); ¶¶ 28-31 (alleging CGMI breached covenant of good faith and fair dealing); ¶¶ 32-35 (alleging CGMI committed professional negligence); ¶¶ 36-44 (alleging CGMI committed fraud); ¶¶ 45-54 (alleging CGMI made negligent representations; ¶¶ 55-58 (alleging CGMI became indebted to Putnam for "money had and received"). In sum, it is reasonable to conclude that the language in the arbitration agreements includes Putnam's claims against CGMI.

CONCLUSION

For the foregoing reasons, the Court GRANTS CGMI's motion to compel arbitration. Docket No. 24. The case is stayed pending arbitration, which must be diligently pursued.[3] Nothing contained in this Order shall be considered a dismissal or disposition of this action, and, should further proceedings in this litigation

---

[3]There appears to be no further reason at this time to maintain the file as an open one for statistical purposes, and the Clerk is instructed to submit a JS-6 Form to the Administrative Office.

become necessary or desirable, any party may move to restore the case to the Court's calendar.  The Court vacates the case management conference scheduled for April 27, 2010.

IT IS SO ORDERED.

Dated: 04/07/10

_____
CLAUDIA WILKEN
United States District Judge